IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SABRE ENERGY CORPORATION,**

    Plaintiff,

v.

**GULFPORT ENERGY CORPORATION, et al.,**

    Defendants.

Case No. 2:19-cv-5559

Judge Graham

Magistrate Judge Deavers

## OPINION AND ORDER

Plaintiff Sabre Energy Corporation ("Sabre") brings this breach of contract action alleging that Defendants Gulfport Energy Corporation ("Gulfport") and Antero Resources Corporation ("Antero") owe it royalty payments on oil and gas produced from "horizontal deep wells." Gulfport and Antero contend that Sabre has no interest in the horizontal deep wells. This matter is before the Court on cross-motions for judgment on the pleadings filed by all parties, Doc. 40, 46, and 48.

### I. Background

TransAtlantic Management Company ("TransAtlantic") held numerous oil and gas leases on which it operated "shallow wells." In 1992, it assigned overriding royalty interests[1] ("ORRIs") to Sabre through two separate assignments. The assignments granted net revenue interests "to [the specified wells] and the drilling units associated therewith" and excluded "the undrilled acreage associated with the lease referenced and/or pooling agreement." Docs. 1-1 at 2; 1-2 at 2. In total, Sabre was assigned a 2% ORRI over 24 wells and a 1% ORRI over 1 well.

---

[1] Overriding royalty interests are a factional interest in the lessee's share of the oil and gas produced pursuant to an oil and gas lease.

1

Gulfport and Antero are TransAtlantic's successors in interests to the leases referenced in the assignments. They have each drilled horizontal deep wells on the leased land. These horizontal deep wells produce oil and gas from beneath the shallow wells, in a geographic formation known as the Utica Shale/Point Pleasant formation. They have refused to pay Sabre ORRIs on the products of these horizontal deep wells, asserting that Sabre's assignments are limited by depth and do not reach the Uticia Shale/Point Pleasant formation.

Sabre disagrees. On December 20, 2019, Sabre filed a three-count complaint for breach of contract, accounting, and declaratory judgment. The case was stayed from November 23, 2020 to May 17, 2021 while Gulfport was undergoing bankruptcy. Since then, Sabre's claim for accounting has been dismissed on a motion to dismiss. Sabre now moves for judgment on the pleading as to its declaratory judgment claim and as to liability on its breach of contract claim. Gulfport and Antero separately move for judgment on the pleadings as to all pending claims.

The cross-motions for judgment on the pleadings ask the Court to determine whether Sabre's ORRIs attach to the oil and gas in the Uticia Shale/Point Pleasant formation. Sabre contends that the assignments granted it ORRIs over "drilling units" without limitation to depth or geologic formation. Gulfport and Antero argue that "drilling units" are inherently limited by depth and the oil and gas in the Uticia Shale/Plaint Pleasant formation are underneath the bottom-limit of Sabre's ORRIs.

## II.    Legal Standard

### A. Judgment on the Pleadings

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard applied to motions for judgment on the pleadings is the same standard applicable to motions to dismiss under Rule

2

12(b)(6). *See Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

   B. **Ohio Contract Law**

In Ohio, ORRI assignments are interpreted using the general rules of contract interpretation. *Sound Energy Co. v. Res. - Utica, LLC*, No. 2:18-cv-1771, 2021 WL 1102483, at *7 (S.D. Ohio Mar. 23, 2021) (citation omitted). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Medical Life Ins. Co.*, 509 N.E.2d 411, 413 (Ohio 1987) (citation omitted). "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *City of St. Marys v. Auglaize Cty. Bd. of Comm'rs*, 875 N.E.2d 561, 566 (Ohio 2007). Common words are to be given "their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997) (internal quotation marks omitted). Technical words are to be given their technical meaning unless a different intention is clearly expressed. *Id.* (citation omitted).

Extrinsic evidence may be used to determine the intent of the parties only when the contract is unclear, ambiguous, or circumstances around the contract give the language special meaning. *Lutz v. Chesapeake Appalachia, L.L.C.*, 71 N.E.3d 1010, 1012 (Ohio 2016) (citation omitted).

Contractual language is ambiguous if "its meaning cannot be determined by the four corners of the agreement or [if] the language is susceptible to two or more reasonable interpretations." *Covington v. Lucia*, 784 N.E.2d 186, 190 (10th Dist. 2003).

### III. Discussion

The issue here is whether the Assignments limit Sabre's ORRIs by depth or formation. On this issue the Assignments provide:

> This assignment of net revenue interest pertains to the aforementioned wells and the drilling units associated therewith and does not extend to the undrilled acreage associated with the lease referenced and/or pooling agreement.

Doc. 1-1 at 2, 1-2 at 2.

### A. Drilling Units

Sabre argues the assignment of ORRIs in drilling units grants it an interest in all oil and gas underneath the surface in the area where the associated wells were drilled. Defendants believe that the assignment is limited to the depths and formations into which the associated wells were drilled.

The term "drilling unit" is unambiguous. Ohio law defines "drilling unit" as "the minimum acreage on which one well may be drilled . . . ." Ohio Rev. Code § 1509.01(G). This "minimum acreage" is based on the depth of the well. *See* Ohio Admin. Code 1501:9-1-04(C). The deeper the well, the greater the minimum acreage required. The largest required drilling unit is 20 acres, which is required to reach depths in excess of 4,000 deep. Ohio Admin. Code 1501:9-1-04(C)(4).

The assignment of ORRIs in drilling units contains inherent limitations. An interest in a drilling unit is limited to the production capability of that drilling unit. The production capability of a drilling unit is determined by its acreage. For example, a drilling unit of 10 acres can produce oil and gas only up to 4,000 feet below the surface. never 4,001 feet. *See* Ohio Admin. Code

4

1501:9-1-04(C)(3). The assignment of ORRIs in a drilling unit does not assign an interest in oil and gas which is forever out of reach of a well on that drilling unit.

Here, questions of fact remain on the production capabilities of the drilling units under which Sabre asserts Defendants are producing gas and oil. Well drilling permits reveal that the assigned wells are of varying depths, ranging from 2,500 to 5,500 feet.[2] Doc. 48-2. It is likely, then, that the associated drilling units are of varying acreages. Some of the wells, those drilled to a depth of 4,000 feet or greater, likely have a drilling unit of at least 20 acres and therefore contain no limitation on depth. *See* Ohio Admin. Code 1501:9-1-04(C)(4) (requiring that wells for the production of oil and gas from a pool greater than four thousand feet in depth be located on a "drilling unit containing not less than twenty acres . . . ."). Others, however, may be on smaller drilling units which have depth limitations. As there remain questions on the production capabilities of the drilling units as well as which drilling units Defendants drilled underneath, judgment on the pleadings on Sabre's breach of contract claim is inappropriate.

Defendants suggest an ORRI in a drilling unit is limited to the depth and formation specified in the associated well's drilling permit. They assert that drilling permits authorize wells to be drilled at specified depths and into specified formations and that wells cannot be drilled deeper without prior permission. This argument misses the mark. The Assignments' grant of ORRIs in drilling units is not limited to the limitations imposed by the associated wells' current drilling permits, especially as those limitations could be modified upon request without changing the drilling unit.

---

[2] The drilling permits are public records and therefore may be considered when deciding the present cross-motions for judgment on the pleadings. *See New England Health Care Emps. Pension Fund v. Ernst & Young*, LLP, 336 F.3d 495, 501 (6th Cir. 2003), holding modified by *Merck & Co. v. Reynolds*, 559 U.S. 633, 130 S. Ct. 1784, 176 L. Ed. 2d 582 (2010); *Filer v. Polston*, 886 F. Supp. 2d 790, 794 (S.D. Ohio 2012), aff'd (Apr. 24, 2013).

**B. Undrilled Acreage**

The assignments exclude "undrilled acreage associated with the lease referenced and/or pooling agreement." Doc. 1-1 at 2, 1-2 at 2. Antero argues that even if drilling unit could be construed as reaching the Uticia Shale/Plaint Pleasant formation, the assignments exclude the formation because it was "undrilled acreage."

Antero's argument is not persuasive at this stage. Acreage commonly refers to the surface area of land. This common usage is supported by the dictionary. "Acreage" is defined as "area in acres." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/acreage, (last accessed June 1, 2022). "Acre" is "a field especially of arable land or pastureland" or "a unit in the U.S. and England equal to 43,560 *square feet*." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/acre, (last accessed June 1, 2022) (emphasis added). If the phrase "undrilled acreage" has acquired a special meaning in the oil and gas industry, extrinsic evidence is required to establish that meaning. *See Lutz,* 71 N.E.3d at 1012.

### IV.  Conclusion

For the reasons stated above, the cross-motions for judgment on the pleadings, Docs. 40, 46, and 48, are **DENIED**.

**IT IS SO ORDERED**.

s/ James L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE: September 22, 2022